OPINION
{¶ 1} Cedric Wright was convicted of murder and having a weapon while under disability. After the trial, Wright moved for a new trial contending that the prosecution had concealed from him that a crucial State's witness had been offered sentencing considerations for his testimony against Wright. The trial court denied the motion, and from that decision Wright has appealed.
 {¶ 2} The State presented evidence that the victim, Sammy Miles, and the defendant got into an argument over fifty dollars Miles contended Wright owed him. The argument escalated to a point where both of them confronted each other on a street with guns. After Vincent Miller convinced Miles to drop his gun, Miles walked toward the defendant with his fists clenched when he was suddenly shot by the defendant. The defendant testified that he shot Miles accidentally because he was in fear of being shot by Miles or his friends.
 {¶ 3} The State produced the testimony of Chad Mason who was incarcerated in the Montgomery County Jail with the defendant. Mason testified that he met the defendant on April 25, 2001 in the county jail while they were both in a holding cell waiting to go to court. Mason said he asked the defendant what he was in jail for and Wright stated he was there for murdering a friend. Mason said Wright told him he felt bad about the shooting and said he didn't know why he did it. (Tr. 460). Mason said the defendant explained how the shooting occurred and the defendant said he knew his friend didn't have a gun when he shot him. (Tr. 464).
 {¶ 4} During his direct testimony, Mason admitted he pled guilty to two counts of felonious assault, two forgeries, and a count of receiving and concealing stolen property on May 1, 2001 and received a six month sentence in the county jail. Mason denied that any promises had been made for his testimony as a prosecution witness. (Tr. 468).
 {¶ 5} During the cross-examination of Mason, Wright's counsel made the following inquiry of the court:
 {¶ 6} "THE COURT: Go ahead.
 {¶ 7} "MR. McKINNEY: I was going to say, Judge, under Rule 1612, (sic) I'm inquiring as to bias or reason to fabricate the story. If this man was given a deal, leniency, as to the basis for his testifying, the only way I can get to that is to ask about what was facing him when he came in and what he pled to eventually.
 {¶ 8} "THE COURT: Well, counsel, I disagree with that. The State of Ohio is required to give you any information regarding any plea bargaining that entailed testimony in this case. No such written offer or oral offer was made. That's been the representation made by the prosecuting attorney's office. Under oath he said he got no consideration.
 {¶ 9} "Your question didn't ask about whether or not he was given any consideration. It asked about what was he brought on. You just can't go on a fishing expedition. There has to be some proof that there was some benefit that was given to him by the State of Ohio.
 {¶ 10} "I will ask you, as an officer of this Court, Linda Howland and Erin Claypoole, whether or not there was any negotiation entered into with Mr. Mason that entailed testimony against Mr. Wright?
 {¶ 11} "MS. HOWLAND: And I will tell you that he was sentenced by Judge Tucker before we knew about him.
 {¶ 12} "THE COURT: Hold on.
 {¶ 13} "Yes, Judge Tucker was the sentencing judge. I have that information.
 {¶ 14} "MS. HOWLAND: And it was in June that he did that. The detective didn't talk to Chad for three weeks after he notified them. And all they put in their report was, talked to Chad Mason. That they didn't put any details in the report. We didn't pick it up that this even happened until very late, when we talked to you and other people about what was going on so you would know.
 {¶ 15} "He was doing his time when we talked to him. We did not change that time, don't intend to change that time.
 {¶ 16} "I will say that he is on house arrest rather than in jail but that's because of the threats of the defendant.
 {¶ 17} "THE COURT: Okay. Well, the objection to the last question will be sustained because you didn't ask about any deals or were there any promises made. So the objection by the State of Ohio is sustained.
 {¶ 18} "MR. McKINNEY: Once more clarification. I didn't ask about prior convictions. I asked him about charges.
 {¶ 19} "THE COURT: Well, they're not convictions and the State of Ohio, as officers of this Court, have indicated that no deals were or no promises were made because the detectives didn't talk to him until after Judge Tucker sentenced him. Without any proof to the contrary, I'm not going to permit the cross.
 {¶ 20} "MS. HOWLAND: I'm not sure that's exactly correct. They may have talked to him before. He didn't ask for anything. We talked to him. When we talked to him, he had been sentenced. But they had no involvement in his case. It's just, talked to him on the tape, put it in the report, and forget about it.
 {¶ 21} "THE COURT: Bottom line, the last objection is well taken. The objection is sustained.
 {¶ 22} "MS. HOWLAND: Thank you."
 {¶ 23} On cross-examination, Mason testified he first spoke to Dayton detectives at the end of May. Mason denied that he expected any leniency in sentencing for telling the detectives about his conversation with Wright. Mason said he went to the detectives "just to get it off his chest so I might be able to sleep. I was not asking for no deal or expecting no deal." (Tr. 476, 477). Mason testified that his lawyer had already negotiated a deal with the prosecution before he ever went to the police with his information about the defendant. (Tr. 476-478).
 {¶ 24} After the defendant was convicted, he filed a motion for a new trial contending that the prosecution had engaged in misconduct in failing to reveal that sentencing concessions had been offered Mason in return for his testimony. In support of the motion, the defendant provided the affidavit of Alan Gabel who represented Mason in the common pleas court. Gabel said that Mason advised him that he had assisted Dayton police in a homicide investigation and he (Gabel) shared that information with the prosecutor and the court. Gabel stated in his initial affidavit that Mason pled guilty to the charges with the understanding that the State did not oppose a community control sentence. In a second affidavit Gabel stated:
 {¶ 25} "The decision to give Chad Mason community control was made by Judge Tucker. There was no formal deal made to obtain community control. I believe all parties were aware of Chad Mason's assistance to the Dayton Police Department in a homicide case and may have contributed to Chad Mason getting community control. However, the Court stated it would give Chad Mason community control with `no breaks.'"
 {¶ 26} The State provided the affidavits of Erin Claypoole and Linda Howland, who were assigned to prosecute the defendant. Both prosecutors stated in their affidavits that no consideration was offered to Chad Mason in exchange for his testifying against the defendant. Specifically, Claypoole and Howland stated that Mason was told that nothing would be done for him in exchange for his testifying and Mason had confirmed that he had asked for nothing in exchange for his testimony. The State also presented the affidavit of Teresa Hiett who prosecuted Mason and she denied that any deal was offered Mason for his testimony against Wright. Ms. Hiett stated that she never knew that Mason gave information concerning the homicide until after he had been sentenced by Judge Tucker.
 {¶ 27} The State also presented the affidavit of William Elzholz, a Dayton detective who was the lead investigator in the shooting of Sammy Miles. He stated that he interviewed Mason on May 7, 2001 and on August 29, 2001, and that no promises were made of him or any other police officer for Mason's testimony against the defendant.
 {¶ 28} The trial court overruled the defendant's motion after considering the affidavits provided. The court stated that Alan Gabel's affidavit specifically undermined the assertion that any agreement existed between witness Chad Mason and the State of Ohio for his testimony.
 {¶ 29} Crim. R. 33 provides that a new trial may be granted on the motion of the defendant for misconduct of the jury, prosecuting attorney, or witnesses for the state. Crim.R. 33(C) provides that the causes enumerated in subsection (2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit.
 {¶ 30} Wright contends that the trial court erred in denying his motion for a new trial because the State conceded in its memorandum filed in opposition to the motion that Mason was operating with an expectation of leniency. The State in its memorandum stated that Mason "may have hoped for favorable consideration if he cooperated with law enforcement authorities but the evidence was uncontroverted there was no deal in exchange for his testimony as is demonstrated by defense counsel Gabel and the prosecutors' affidavits."
 {¶ 31} Wright also notes that conspicuously absent from Teresa Hiett's affidavit is any corroboration of Mason's testimony that his sentence was worked out before the sentencing judge was informed that he was cooperating with the murder case. The State notes, however, that Teresa Hiett specifically stated that she did not know that Mason gave valuable information to the police until after he had been sentenced.
 {¶ 32} A motion for a new trial is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71. Wright has wholly failed to demonstrate the trial court erred in this case much less abused its discretion. The appellant failed to present in affidavits any suggestion that the State secured Mason's testimony by a promise of leniency in a sentencing recommendation. The appellant's assignment of error is overruled. The judgment of the trial court is Affirmed.
WOLFF, J., and GRADY, J., concur.